Andre Camille SMART, Petitioner,

v.

John ASHCROFT, Attorney General, Respondent.

No. 02–4505.

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 2004.

Decided March 9, 2005.

Daniel M. Pell, Esq. (Elyana Tarlow, Esq., on the brief), York, PA, for Petitioner.

Michael C. James, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, Sara L. Shudofsky, Assistant United States Attorney, on the brief), New York, NY, for Respondent.

Before: WALKER, Chief Judge, SACK and HALL, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

Andre Camille Smart petitions for review of a September 5, 2002, order of the Board of Immigration Appeals ("BIA"), summarily affirming an order of removal issued against him. In his petition, Smart argues that former section 321 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1432 (repealed 2000), the derivative citizenship statute applicable to foreign-born children of alien parents who become naturalized citizens, discriminates against him because he is adopted, in violation of the equal protection guarantee contained in the Due Process Clause of the Fifth Amendment to the U.S. Constitution. Because 8 U.S.C. § 1432's treatment of adopted children is rationally related to a legitimate government interest, we hold that the statute does not unconstitutionally discriminate against Smart, and deny his petition.

## BACKGROUND

Smart was born in Jamaica in 1982. In July 1988, while residing in Jamaica, he was adopted by Daphne and Horace McLean. Daphne McLean had become a U.S. citizen through naturalization approximately a year earlier, in August 1987; Horace McLean was naturalized several months after Smart's adoption, in January 1989. Smart did not reside with either parent at the time each was naturalized in the United States. In September 1989, however, Smart was admitted to the United States as a lawful permanent resident, and took up residence with his adoptive parents. Twelve years later, in 2001, he was convicted upon a guilty plea in New York state court of attempted robbery in the second degree, and sentenced to a determinate term of two years imprisonment. In May 2001, three months after his conviction, the Immigration and Naturalization Service ("INS") served Smart with a Notice of Hearing, charging him as removable pursuant to INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), based on his conviction for an aggravated felony, as that term is defined in INA § 101(a)(43)(F), 8 U.S.C. § 1101(a)(43)(F).

At his hearing before the immigration judge ("IJ"), Smart's sole defense to re-

moval was that he had derived U.S. citizenship from his adoptive parents, both of whom were naturalized before Smart's eighteenth birthday, and that therefore he could not be deported as a criminal alien. Smart acknowledged that, on its face, the statutory provision under which he was claiming derivative citizenship, former 8 U.S.C. § 1432, precluded him, as a foreign-born child of alien adoptive parents, from achieving derivative citizenship because he was not residing with his adoptive parents in the United States at the time they were naturalized. Smart contended, however, that the statute unconstitutionally denied him equal protection of the laws because it treats adopted children and biological children differently. He urged the IJ to hold as much and to deem him a citizen because he had satisfied the statutory requirements applicable to foreign-born biological children of alien parents. The IJ concluded that constitutional issues were beyond his jurisdiction and ordered Smart removed.

The BIA affirmed the IJ's order without opinion. Smart timely petitioned this court for review, asserting a claim of U.S. nationality as a bar to his removal.

## DISCUSSION

■ While we do not ordinarily have jurisdiction to review, on direct petition, a final order of removal based on an alien's conviction for an aggravated felony, *see* 8 U.S.C. § 1252(a)(2)(C), we may review such an order when the alien challenges the applicability of this limitation to our jurisdiction, *see Drakes v. Ashcroft,* 323 F.3d 189, 190–91 (2d Cir.2003). Here, because Smart claims that he is not an alien, but instead a U.S. citizen and thus not subject to removal under the statute, the jurisdictional inquiry "merges" with the merits of Smart's claim. *See id.*

Former 8 U.S.C. § 1432, the statute that Smart concedes controls his case, governs derivative citizenship for "a child born outside the United States of alien parents," linking the child's claim of citizenship to the naturalization of the child's parents. Under subsection (a), a foreign-born biological child of alien parents becomes a U.S. citizen upon the naturalization of both his parents, if such naturalization takes place before the child turns eighteen and either (1) the child is residing in the United States pursuant to a lawful admission of permanent residence at the time of the naturalization of the parent last naturalized, *or* (2) thereafter begins to reside permanently in the United States while under the age of eighteen. However, 8 U.S.C. § 1432(b), the subsection applicable to Smart, provides that where the foreign-born child is adopted by alien parents, derivative citizenship under the terms of subsection (a) requires additionally that the adopted child be "residing in the United States at the time of naturalization of such adoptive parent or parents, *in the custody* of his adoptive parent or parents, pursuant to a lawful admission of permanent residence." (emphasis added).

Former 8 U.S.C. § 1432, then, establishes different requirements for obtaining derivative citizenship for a foreign-born biological child of alien parents, from those applicable to a similarly situated child who is adopted. The relevant difference in Smart's case is that while biological children under the age of eighteen can move to the United States *after* their parents have become naturalized and still achieve derivative citizenship, adopted children cannot; foreign-born adopted children must reside "in the United States at the time of naturalization" of their adoptive parents, in the custody of their adoptive parents. Because Smart was not residing with his adoptive parents in the United States at the time they were naturalized,

he cannot claim derivative citizenship under the terms of former 8 U.S.C. § 1432.

Former 8 U.S.C. § 1432 was repealed in 2000 by the Child Citizenship Act ("CCA"), 8 U.S.C. § 1431. The CCA simplified the statutory regime governing derivative citizenship. It allows a child to achieve derivative citizenship where only one parent is a U.S. citizen, and eliminates the requirement that adopted children reside with their adoptive parents at the time of their naturalization, although it still imposes certain limitations relevant only to adopted children. See 8 U.S.C. § 1431(b) ("Subsection (a) of this section shall apply to a child adopted by a United States citizen parent if the child satisfies the requirements applicable to adopted children under section 1101(b)(1) of this title."). The CCA changes do not benefit Smart because the CCA is not retroactive, see Drakes, 323 F.3d at 191, and Smart was no longer under eighteen years old upon its enactment.

Smart argues that the former statute's different treatment of biological and adopted children violates the equal protection guarantee of the Due Process Clause of the Fifth Amendment to the U.S. Constitution. He urges us to find the law unconstitutional with respect to his case, treat him as if he were a foreign-born biological child under the statute, and vacate the order of removal issued against him.

With respect to his equal protection challenge, Smart concedes that we review the statutory provision in question under a rational basis standard, upholding the statute if the different treatment between biological and adopted children is rationally related to a legitimate government interest. There is no suggestion here that adopted children are a "protected" class entitled to invoke heightened scrutiny. Furthermore, we are reviewing a statute in the immigration context, an area of law in which Congress receives particular deference. See Skelly v. INS, 168 F.3d 88, 91 (2d Cir.1999); Giusto v. INS, 9 F.3d 8, 9 (2d Cir.1993) (per curiam). Consequently, our review of the statute is quite limited. At most, "[t]he government need only articulate a rational reason for making the distinction [in the statute], and need not provide any evidence to support the rationality of the reason." Domond v. INS, 244 F.3d 81, 87 (2d Cir.2001).

The government takes the position that 8 U.S.C. § 1432(b)'s requirement that a foreign-born adopted child reside with his adoptive parents in the United States at the time of his parents' naturalization advances two primary interests: (1) "ensur[ing] that a child who becomes an American citizen has a real relationship with a family unit, and with the United States, and is not a mere beneficiary of a legal relationship created in a foreign court;" and (2) "deterring immigration fraud by those who, without this restraint, could pose as adoptive parents and fraudulently secure derivative citizenship for children by engaging in adoptions in foreign courts." We agree with the government that both of these are legitimate government interests, sufficient to withstand a rational basis challenge. Congress is entitled to require that an individual have some meaningful connection to the United States before he or she is granted citizenship, and may take measures to deter those who would circumvent this requirement. See Tuan Anh Nguyen v. INS, 533 U.S. 53, 64–65, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001) (finding "important" an asserted government interest in requiring evidence of a relationship between child seeking derivative citizenship and citizen parent that "consists of the real, everyday ties that provide a connection between child

and citizen parent and, in turn, the United States").

While not precisely tailored to advance these interests, 8 U.S.C. § 1432(b)'s requirement that adopted children actually reside with their parents in the United States at the time the parents become naturalized does bear a rational relationship to them. *See Heller v. Doe,* 509 U.S. 312, 321, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) ("A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." (citation and internal quotation marks omitted)). It is rational for Congress to view co-habitation at the time of naturalization as an indication that a bond exists between the adopting parents and their child (and concomitantly between the child and the United States) and therefore to mandate it as an additional prerequisite to granting derivative citizenship to that child. In so doing, the co-habitation requirement also rationally serves to discourage immigration fraud.

Finally, Congress's repeal of 8 U.S.C. § 1432(b) and alteration, in the CCA, of the derivative citizenship requirements for foreign-born adopted children is not determinative as to whether the former statute is rationally related to a legitimate government interest. A congressional decision that a statute is unfair, outdated, and in need of improvement does not mean that the statute when enacted was wholly irrational or, for purposes of rational basis review, unconstitutional. *Cf. Howard v. United States,* 354 F.3d 1358, 1361–62 (Fed.Cir.2004) ("Congress acts based on judgments as to preferable policy; the fact that Congress repeals or modifies particular legislation does not reflect a judgment that the legislation, in its pre-amendment form, lacked rational support.").

Accordingly, we find that the different treatment of biological and adopted children under former 8 U.S.C. § 1432 is rationally related to a legitimate government interest and reject Smart's claim that it violates his constitutional right to equal protection of the laws.

### CONCLUSION

For the foregoing reasons, the petition for review is DENIED.