NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 12-1937

———————

JOSE A. CHAVARRIA-CALIX,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

———————

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A042-785-878)
Immigration Judge:  Honorable Rosalind Malloy

———————

Argued January 8, 2013

Before:  RENDELL, FISHER and JORDAN, Circuit Judges

(Opinion Filed: January 18, 2013)

———————

Ayodele Gansallo, Esq.
HIAS & Council Migration Service of Philadelphia
2100 Arch Street, 3rd Floor
Philadelphia, PA  19103

Adam Pessin, Esq.    [ARGUED]
Fine, Kaplan & Black
One South Broad, Suite 2300
Philadelphia, PA  19107
    *Counsel for Petitioner*

Jeffrey Bernstein, Esq.
Ada. E. Bosque, Esq.
Puneet Cheema, Esq.     **[ARGUED]**
Matthew A. Spurlock, Esq.
United States Department of Justice
Office of Immigration Litigation,
Civil Division
P.O. Box 878
Ben Franklin Station
Washington, DC  20044
   *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

RENDELL, <u>Circuit Judge</u>.

Petitioner, Jose Chavarria-Calix, comes before us for a second time seeking relief from an order of removal. He requests that we exercise our equitable powers to recognize an effective naturalization date for his mother, Reina Calix, of not later than November 16, 1999, which would, in effect, confer derivative citizenship on Chavarria-Calix and prevent his removal to his native Honduras. Under *INS v. Pangilinan*, 486 U.S. 875 (1988), we lack the authority to exercise our equitable powers to confer citizenship upon an alien where the statutory requirements for naturalization have not been met and, accordingly, we must deny his petition.

I.

Chavarria-Calix entered this country legally as a permanent resident at the age of eight on July 11, 1990. On July 30, 1997, when Chavarria-Calix was fifteen years old, his mother applied for United States citizenship. (App. 3.) Under the relevant statutory

2

regime at the time, had Reina Calix naturalized before his eighteenth birthday, Chavarria-Calix would have automatically obtained derivative citizenship.[1] When Reina Calix applied, the average application processing time was twelve to fifteen months. (*Id*. 4.) However, in Reina Calix's case, the government took nearly 32 months to process and complete her application, and she became a United States Citizen on March 10, 2000, almost four months after Chavarria-Calix turned eighteen. (*Id*.) Thirteen months of this delay is attributable to the clean-up of an asbestos contamination in the Newark, New Jersey INS office that housed Reina Calix's application, following a water leak in the building. (*Id*.)

---

[1] Former section 321(a) of the Immigration and Nationality Act provided in relevant part that:

> A child born outside of the United States of alien parents … becomes a citizen of the United States upon fulfillment of the following conditions:
> (1) The naturalization of both parents; or
> (2) The naturalization of the surviving parent if one of the parents is deceased; or
> (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
> (4) such naturalization takes place while such child is under the age of eighteen years; and
> (5) such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. § 1432(a) (repealed).

On October 16, 2002, Chavarria-Calix was convicted in Pennsylvania state court of possession of a controlled substance, one gram of cocaine, with intent to deliver in violation of 35 Pa. Cons. Stat. Ann. § 780-113(a)(30). As a consequence, the government charged his as removable under the Immigration and Nationality Act ("INA") § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii), as an alien convicted of an aggravated felony and under INA § 237(a)(2)(B), 8 U.S.C. § 1227 (a)(2)(B), as an alien convicted of a controlled substance violation. The Immigration Judge ("IJ") found him removable as charged, and the Board of Immigration Appeals ("BIA") affirmed.

On his first petition to this Court, Chavarria-Calix argued that he was a United States citizen by virtue of his mother's naturalization under former INA § 321(a)(4), 8 U.S.C. § 1432(a)(4). We recognized that his age (eighteen) at the time of his mother's naturalization "appears to defeat Chavarria[-Calix's] claim for derivative citizenship," and determined that the Child Status Protection Act of 2002 ("CSPA"), did not by its terms apply to his claim. *Calix-Chavarria v. Att'y Gen.*, 182 F. App'x 72, 75 (3d Cir. 2006). Nevertheless, we questioned whether the reasoning of the CSPA should apply to his claim. *Id*. at 76. Noting that "Congress has exclusive constitutional authority over naturalization," and that under *Pangilinan*, 486 U.S. at 884-85, "[f]ederal courts do not have the power to confer citizenship in violation of the limitations established by statutes enacted by Congress," we remanded to the BIA, enlisting its view as to whether the CSPA could somehow impact the congressional command in Chavarria-Calix's situation. *Calix-Chavarria*, 182 F. App'x at 76.

The BIA, in turn, remanded to the IJ who concluded that the reasoning of the CSPA did not apply to Chavarria-Calix's case and ordered him removed. In the alternative, Chavarria-Calix urged that theories of equitable estoppel or nunc pro tunc relief should be applied to afford him remedy. The IJ declined to apply these precepts and the BIA affirmed, issuing its own reasoned decision. Chavarria-Calix has filed a petition for review in this Court.

## II.

As a preliminary matter, the government has challenged our jurisdiction. We lack jurisdiction to review a final order of removal against an alien such as Chavarria-Calix who is removable on account of his conviction for an aggravated felony, *see* 8 U.S.C. § 1252(a)(2)(C), unless the petition presents a colorable question of law or constitutional claim, *see id*. at § 1252(a)(2)(D). The government contends that Chavarria-Calix raises no such colorable issues. We disagree. "The issue of derivative citizenship is a purely legal issue of statutory interpretation." *Morgan v. Att'y Gen*., 432 F.3d 226, 229 (3d Cir. 2005). Had we not considered Chavarria-Calix's arguments to be colorable, we would not have remanded the matter to the BIA in the first place.

Because the BIA conducted a de novo review in this case, we review its opinion as the final agency decision. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 & n.2 (3d Cir. 2001). "We . . . . take the BIA's findings of fact as conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. . . . [And] we review the BIA's legal conclusions de novo, including both pure questions of law and applications of law to

5

undisputed facts." *Rranci v. Att'y Gen.*, 540 F.3d 165, 171 (3d Cir. 2008) (internal quotations marks and citations omitted).

III.

Chavarria-Calix seeks equitable relief recognizing an effective naturalization date for his mother of not later than November 16, 1999, notwithstanding the fact that it did not actually occur until March 10, 2000. He argues that we should grant nunc pro tunc relief to remedy the inequities in this case. Alternatively, Chavarria-Calix maintains that the government should be equitably estopped from denying his derivative citizenship due to the lengthy delay in its processing of his mother's application. While we are not blind to the hardship that removal to Honduras will cause Chavarria-Calix and his family, we are bound by *Pangilinan*, 486 U.S. at 882-85, and cannot grant the relief he seeks.

It is fundamental that "the power to make someone a citizen of the United States has not been conferred upon the federal courts . . . as one of their generally applicable equitable powers." *Id*. at 883-84. Rather, the Constitution confers on Congress exclusive authority to establish rules of naturalization. *Id*. at 882. The federal courts have the power to make someone a citizen of the United States only in "strict compliance" with the terms established by Congress. *Id*. at 884. "'Once it has been determined that a person does not qualify for citizenship, . . . the [federal] court has no discretion to ignore the defect and grant citizenship.'" *Id*. (quoting *Fedorenko v. United States*, 449 U.S. 490, 517 (1981) (citation omitted)). "Neither by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of the[] limitations [established by Congress]." *Id*. at 885.

6

Former section 321(a)(4) plainly requires that a child born outside of the United States to alien parents must be under eighteen years of age at the time his or her parent or parents naturalize in order to derive citizenship based on his or her parent or parents' naturalization. *See* 8 U.S.C. § 1432(a) (repealed). Chavarria-Calix does not meet that requirement. As both estoppel and nunc pro tunc relief are equitable remedies, *see Cheruku v. Att'y Gen.*, 662 F.3d 198, 207 (3d Cir. 2011), exercising either in this circumstance would constitute an impermissible equity-based departure from the strict requirements set forth by Congress.

Chavarria-Calix argues that *Pangilinan* is no bar to the relief he seeks because he is not asking the Court to confer citizenship on him, but rather is asking the Court to recognize an appropriate effective date for his mother's naturalization. We see a distinction without any difference. As Chavarria-Calix acknowledges, derivative citizenship under former section 321 occurs automatically upon fulfillment of the statutory conditions. (Br. in Supp. of Pet'r's Appeal of the BIA's Order of Removal 14). Chavarria-Calix has fulfilled every one of these conditions save for the age requirement. Recognizing Reina Calix's effective naturalization date as November 16, 1999, or estopping the government from denying as much, would resolve Chavarria-Calix's only remaining hurdle to citizenship. He would obtain citizenship automatically by operation of law as a consequence of the equitable relief he seeks. The rule and the spirit of *Pangilinan* cannot be so easily avoided.

Even if *Pangilinan* were not sufficient to stay our hands, Chavarria-Calix's failure to satisfy the traditional requirements for either nunc pro tunc relief or equitable estoppel

would be. In *Cheruku*, 662 F.3d at 208, we identified three limited categories in which nunc pro tunc relief has been granted in immigration proceedings. Chavarria-Calix argues that his case falls within one such traditional category because retroactive relief is necessary "to correct an error in immigration proceedings." *Id*. (citing *Edwards v. INS*, 393 F.3d 299, 309 (2d Cir. 2004)). We cannot agree that the delay in processing his mother's application is a "significant error" warranting a remedy nunc pro tunc. *Edwards*, 393 F.3d at 309. Additionally, Chavarria-Calix fails to satisfy the requirements for invoking equitable estoppel against the government because mere delay does not rise to the level of "affirmative misconduct." *Mudric v. Att'y Gen.*, 469 F.3d 94, 99 (3d Cir. 2006).[2,3]

Finally, we agree with the BIA and the IJ that the reasoning of the CSPA cannot be extended to Chavarria-Calix's case. The CSPA amended the INA to provide age-out protection for some aliens and not for others. The provision that Chavarria-Calix claims citizenship under, former section 321(a), falls in the latter category. "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980). We see no indicia of such a contrary intent here. Thus, we agree that the reasoning of the CSPA does not apply to this case.

---

[2] Chavarria-Calix also requests that we fashion an equitable remedy to avoid what he urges is a Constitutional deprivation in this case. And yet, this contention is so vague that we need not address it.

[3] We note that the delay here was long, but involved no egregious behavior or affirmative misconduct by the government. We do not address whether some relief or remedy might be available notwithstanding *Pangilinan* in an extreme fact pattern not presented here.

8

## IV.

For the foregoing reasons, we will deny Chavarria-Calix's petition.